IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN RUSSELL and<br>DIANA RUSSELL, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | | Civil Action No.: RDB 06-2162 |
| | * | |
| ATLANTIC CASUALTY<br>INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This insurance coverage dispute arises from a Complaint filed by John and Diana Russell (collectively, "Plaintiffs") against Atlantic Casualty Insurance Company ("Defendant"). Plaintiffs contend that Defendant is responsible for losses associated with the collapse of their pole barn[1] pursuant to a commercial general liability policy that Defendant issued to Susquehanna Custom Homes Inc. ("Susquehanna"). Susquehanna was the company that Plaintiffs hired to dismantle and reassemble their pole barn.

The primary question presented by the parties' submissions is whether there is a genuine dispute of material fact with respect to the *cause* of the barn's collapse. The parties agree that if the barn collapsed because of Susquehanna's negligence, then Plaintiffs' losses are not covered

---

[1] This Court notes that the parties do not define the phrase "pole barn." *Cf. Batson v. Clark*, 980 S.W.2d 566, 573 (Ky. Ct. App. 1988) (describing the "pole barn" at issue in that case as consisting "of ten poles, metal sheets, trusses and a roof. The poles were placed two feet in the ground into one square foot of poured concrete. The pole barn had no footer, no flooring and no foundation.").

under Susquehanna's insurance policy. However, if the collapse was caused by strong winds, then Plaintiffs' losses would be covered. Currently pending before this Court is Defendant's Motion for Summary Judgment. (Paper No. 20.) This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendant's Motion for Summary Judgment is DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**I.  Collapse of Pole Barn.**

Between the Spring and Summer of 2005, Plaintiffs contracted with Susquehanna to dismantle and reassemble their pole barn.[2] (Compl. ¶ 3; Def.'s Mem. Supp. Summ. J. Ex. A.) On November 16, 2005, the barn collapsed during its reassembly. (Compl. ¶ 7.) Plaintiffs submitted a claim for the damages resulting from the collapse pursuant to a commercial general liability policy issued by Defendant to Susquehanna. (Compl. ¶ 8; *see also* Def.'s Mem. Supp. Summ. J. Ex. B (the "Policy").) It is worth emphasizing that this insurance policy was owned by Susquehanna, *not* Plaintiffs. After investigating Plaintiffs' claim, Defendant denied coverage and liability.[3] (Compl. ¶ 8.)

---

[2] Although inconsequential, this Court notes that the parties differ with respect to the date of the contract between Plaintiffs and Susquehanna. (*Compare* Def.'s Mem. Supp. Summ. J. p. 3 ("In the *Spring of 2005*, Plaintiffs, John and Diana Russell . . . entered into a contract with Susquehanna Custom Homes, Inc. . . .") (emphasis added) *with* Pls.' Mem. Opp. p. 1 ("In the *summer of 2005*, Plaintiffs hired Worrell Reynolds individually, and doing business as Susquehanna Custom Homes, Inc. . . . to erect a wooden pole arena . . . on Plaintiffs' property")(emphasis added).)

[3] Plaintiffs' claim was investigated with Defendant reserving all rights and defenses under the Policy. (*See* Def.'s Mem. Supp. Summ. J. Ex. F.)

**II.     The Insurance Policy.**

Susquehanna's Policy covers claims for damages that, *inter alia*, are "caused by an 'occurrence' that takes place in the 'coverage territory'. . . ." (Policy § I, Coverage A, 1.a-b.) "Occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id*. at § V.13.) "Coverage territory" is defined as including "[t]he United States of America . . ." (*Id*. at § V.4.a.)

The Policy also excludes coverage for certain claims. For example, no coverage is provided for "[p]roperty damage to. . .[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if property damages arise out of those operations. . . [and] [t]hat particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it. . ." (Policy § I, Coverage A, 2.j(5)–(6) (internal quotations omitted).) The Policy also excludes coverage for "[p]roperty damage to impaired property or property that has not been physically injured, arising out of. . .(1) [a] defect, deficiency, inadequacy or dangerous condition in your product or your work; or (2) [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."[4] (*Id*. at § I, Coverage A, 2.m (internal quotations omitted).) Finally, the Policy provides that the signer has "[f]ailed to fulfill the terms of a contract or agreement; if such property can be restored to use by. . .[t]he repair, replacement, adjustment or removal of your product or your work." (*Id*. at §

---

[4] "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed by. . .[y]ou," (Policy § V.21.a(1)(a).) "Your work" is defined as "[w]ork or operations performed by you or on your behalf; and . . . [m]aterials, parts or equipment furnished in connection with such work or operations." (*Id*. at § V.22.a(1)-(2).)

3

V.8.b.a.)

### III.     Plaintiff's Prior Suit Against Susquehanna.

On February 8, 2006, Plaintiffs filed a complaint against Susquehanna in the Circuit Court for Cecil County, Maryland.  (Def.'s Mem. Supp. Summ. J. Ex. C (the "Susquehanna Compl.").)  In that complaint, Plaintiffs asserted a negligence claim against Susquehanna for failing to reassemble the pole barn in a workmanlike manner:

> That the Defendants constructed Plaintiffs' pole barn in a negligent, unskillful and unworkman [sic] manner causing the roof trusses to collapse during reassembling of the pole barn. . .

(Susquehanna Compl. ¶ 4.[5])  Plaintiffs also asserted a breach of contract claim against Susquehanna.  Although the precise nature of this claim is difficult to discern, Plaintiffs appear to contend that Susquehanna breached the contract by failing to reassemble the pole barn in a timely fashion.  (*Id*. at ¶ 7.)  After Susquehanna failed to file an Answer, the Circuit Court entered default judgment in favor of Plaintiffs and against Susquehanna in the amount of $110,943.00.  (*See* Def.'s Mem. Supp. Summ. J. Ex. D.)

### IV.     Procedural History of This Action.

On July 19, 2006, Plaintiffs filed a one-count Complaint for Declaratory Judgment against Defendant Atlantic Casualty Insurance Company in the Circuit Court for Cecil County, Maryland.  The relief sought includes: (1) a declaration that losses sustained by Plaintiffs as a result of the barn collapse are covered by the Policy, and (2) an order compelling Defendant to

---

[5]     Only one of the nine paragraphs in this two-page complaint addresses Susquehanna's alleged negligence.

immediately satisfy the default judgment entered against Susquehanna in state court.[6]  (*See* Compl. ¶¶ 1-13.)  On August 18, 2006, Defendant filed a Notice of Removal asserting, as the basis for this Court's jurisdiction, diversity of citizenship pursuant to 28 U.S.C. § 1332.  (*See* Paper No. 1 ¶¶ 2-3.)  On February 20, 2007, Defendant filed the subject Motion for Summary Judgment.  (Paper No. 20.)  On March 9, 2007, Plaintiffs filed two motions: (1) a Motion to Amend or Withdraw Admission, (Paper No. 24) and (2) an Opposition to Defendant's Motion for Summary Judgment, (Paper No. 25).  In their Motion to Amend or Withdraw Admission, Plaintiffs requested leave to withdraw their previous admission that the cause of the collapse was "'failure of Reynolds/Susquehanna to properly brace the roof trusses'" in favor of the proposition that "[a]fter reasonable inquiry, the information known or readily obtainable by the Plaintiffs is insufficient to enable the Plaintiffs to admit or deny [the cause of the collapse]."  (*Id*. at ¶¶ 2 & 5.)  Plaintiffs represented that their previous admission was "inadvertent and erroneous." (*Id*. at ¶ 4.)  On May 31, 2007, this Court granted Plaintiffs' Motion to Amend or Withdraw Admission.  (Paper No. 34.)

---

[6]   The record reflects that no jury demand has been made in this action.  The "Civil Non-domestic Case Information Report" attached to Plaintiffs' Complaint indicates that Plaintiffs are not demanding a jury trial.  (*See* Paper No. 2 p. 1 (where Plaintiffs checked the box marked "No" in response to the question "Jury Demand").)  A status report filed by Defendant also indicates that no jury demand has been made.  (*See* Paper No. 19 p. 1 (Providing that if this matter proceeds to trial the "*non-jury* trial will last two days.") (emphasis added).)  Finally, neither the docket sheet nor the pleadings reflect a request for a jury trial.  (*See*, *e.g.*, Paper No. 1 (Notice of Removal and Civil Cover Sheet); Paper No. 2 (Complaint and Civil Non-domestic Case Information Report); Paper No. 12 (Answer)); *cf*. 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2313 (2d ed. 1995) ("A litigant is not deprived of a jury trial merely because an action in which it is a party is one for a declaratory judgment. Although the origin of the declaratory judgment procedure largely is in equity, the remedy itself is neither legal nor equitable and the fact that a declaratory judgment is sought neither restricts nor enlarges any right to jury trial that would exist if the issue were to arise in a more traditional kind of action for affirmative relief.").

**STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A genuine issue of material fact may exist if the evidence presented indicates a factual dispute that could be resolved in favor of the non-movant. *Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 742 (D. Md. 2003) (citing *Anderson*, 477 U.S. at 248-49). The court makes all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, a judge's function is to determine whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249. If the court finds that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, then the granting of summary judgment is mandatory. *Celotex*, 477 U.S. at 322.

**ANALYSIS**

The fundamental dispute in this case concerns the *cause* of the pole barn's collapse. Plaintiffs contend that the pole barn collapsed because of high winds while Defendant maintains

6

that the pole barn collapsed because of Susquehanna's negligence.  For reasons explained below, the existence of this dispute did not become clear until *after* Defendant filed its Motion for Summary Judgment.  In addition, the position that Plaintiffs are taking in this litigation is inconsistent with the position that Plaintiffs took in their prior state court action.

As noted above, Defendant filed the subject Motion for Summary Judgment on February 20, 2007.  Defendant's initial papers focused on their contention that it was "undisputed that the collapse was caused by Susquehanna's failure to install temporary bracing on the trusses during reassembly."  (Def.'s Mem. Supp. Summ. J. p. 12.)  Before briefing on Defendant's motion was complete, however, Plaintiffs moved to amend their prior admission that the cause of the collapse was Susquehanna's negligence in favor of the proposition that Plaintiffs cannot admit or deny the cause of the collapse.  (*See* Paper No. 24 (filed 3/9/07).)  At the same time, Plaintiffs filed a response to Defendant's motion based in large part on the claim that the collapse of the pole barn was caused by *high winds*.[7]  (*See* Pls.' Mem. Opp. pp. 2-3 (also filed 3/9/07).)  On

---

[7] In their opposition papers, Plaintiffs also contend that one of Defendant's representatives "accepted coverage" for losses associated with the barn's collapse.  (*See*, *e.g.*, Pls' Mem. Opp. p. 2 ("Mr. Schley accepted coverage and liability on behalf of the Defendant and authorized Reynolds/Susquehanna to clean up the debris.").)  Under Maryland law, however, "waiver or estoppel may occur only when it does not create new coverage; an extension of coverage may only be created by a new contract."  *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 497 (4th Cir. 1998) (citing *Prudential Ins. Co. v. Brookman*, 175 A. 838, 840 (Md. 1934)); *see also Creveling v. Government Employees Ins. Co.*, 828 A.2d 229, 244 (Md. 2003) ("Conditions going to the coverage or scope of a policy as distinguished from those furnishing a ground for forfeiture may not be waived by implication from conduct or action.") (internal citations and quotation marks omitted).  To the extent that Plaintiffs are attempting to articulate a claim of detrimental reliance, moreover, that claim is neither asserted in the Complaint nor adequately supported in their papers.  *Cf. Beard v. American Agency*, 550 A.2d 677, 688 (Md. 1988) ("'Estoppel' . . . refers to an abatement raised by law of rights and privileges of the insurer when it would be inequitable to permit their assertion.  It necessarily implies prejudicial reliance of the insured upon some act, conduct, or nonaction of the insurer.") (citation and internal quotation marks omitted).  As a result, this Court need not reach the issue of alleged acceptance

7

March 23, 2007, Defendant filed its reply papers, asserting for the first time that Plaintiffs should be limited to allegations made in their state court complaint pursuant to the "exclusive pleading rule." (*See* Def.'s Reply pp. 3-4.) In accordance with this Court's Local Rules, Plaintiffs were not permitted to respond to Defendant's reply papers. (*See* Paper No. 33.)

Putting aside this somewhat unusual procedural history, the parties' submissions raise essentially three questions: First, whether the "exclusive pleading rule" requires that Plaintiffs are limited to the negligence theory asserted in their prior state-court litigation. Second, whether the entry of default judgment against Susquehanna in that same litigation precludes Plaintiffs from asserting a different theory regarding the cause of the pole barn's collapse here. Third, whether there is a *genuine* dispute of material fact with respect to the cause of the pole barn's collapse. These questions are addressed in turn below.

**I.     The "Exclusive Pleading" Rule.**

Defendant relies on the "exclusive pleading" rule to argue that Plaintiffs are barred from asserting that the collapse of the pole barn was caused by strong winds. (*See* Def.'s Reply pp. 3-4.) That rule is typically applied in the context of "duty to defend" cases where an insurance company denies that it owes an insured party a duty to defend against a particular lawsuit. In such cases, the exclusive pleading rule "require[s] a reviewing court to analyze only the complaint and the insurance policy in determining whether a claim could potentially come within the coverage" and, therefore, whether the insurance company owes a duty to defend. *Montgomery County Bd. Of Educ. v. Horace Mann Ins. Co.*, 840 A.2d 220, 225 (Md. 2003)

---

and the fundamental question remains whether coverage is available to Plaintiffs under the terms of the Policy.

(citing *Nationwide Ins. Co. v. Rhodes*, 732 A.2d 388, 393 (Md. Ct. Spec. App. 1999)).[8] This action, however, is not a duty-to-defend case. Plaintiffs are neither insured by Defendant nor claim that Defendant owes a duty to defend against a lawsuit. As a result, the exclusive pleading rule does not apply in this action.

**II.     Issue Preclusion.**

In light of Defendant's suggestion that Plaintiffs are bound by allegations made in their prior litigation, this Court also considers whether Plaintiffs are precluded from litigating the issue of the cause of the barn's collapse. As noted above, Plaintiffs' prior action in the Circuit Court for Cecil County, Maryland resulted in a default judgment against Susquehanna. *See* Factual Background and Procedural History *supra* § III. Maryland courts have explained that, generally, a default judgment is *insufficient* to support issue preclusion against a third party:

> Where the prior judgment is entered based on a default, the law distinguishes between claim preclusion (*res judicata*) and issue preclusion (collateral estoppel). Generally, the rule is that a default judgment will support claim and defense preclusion against the party in default, but not issue preclusion against a third party.

*Porter Hayden Co. v. Bullinger*, 713 A.2d 962, 976 (Md. 1998); *see also John Crane, Inc. v. Puller*, 899 A.2d 879, 899 (Md. 2006) (citing *Porter Hayden* for the proposition that "default judgment does not have preclusive effect where issues of fact were not actually litigated"), *cert. denied*, 906 A.2d 943 (Md. 2006).

In this case, there is no suggestion that the cause of the pole barn's collapse was actually

---

[8] *See also Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d 859, 863-64, 866 (Md. 1995) (where a complaint fails to assert tort allegations that are sufficient to establish the potentiality of coverage, an insured is permitted to introduce extrinsic evidence to bring the action within coverage, while the insurer is limited to utilizing only the complaint and insurance policy.)

9

litigated in Plaintiffs' prior litigation.  For example, the record does not indicate that the Court engaged in "the deliberative process of fact-finding" in connection with the issue of the cause of the pole barn's collapse when it issued the default judgment against Susquehanna.  *Puller*, 899 A.2d at 898 (noting that the "core activity" from which issue preclusion proceeds includes "receiv[ing] and consider[ing] evidence on controverted issues of fact, assess[ing] the credibility of the sources of the evidence, weigh[ing] the evidence, and, explicitly or implicitly mak[ing] findings of fact").  Accordingly, this Court finds that issue preclusion does not apply to the case at bar.

### III.  Genuine Dispute of Material Fact.

The core issue raised by the parties' submissions is whether there is a *genuine* dispute of material fact with respect to the cause of the collapse of Plaintiffs' pole barn.  For reasons explained below, this Court finds that there exists a genuine dispute with respect to the cause of the collapse and, as a result, Defendant's Motion for Summary Judgment is DENIED.

It is well-established that summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate only where there are no *genuine* disputes of material fact and when the moving party is entitled to judgment as a matter of law.  *Liberty Lobby*, 477 U.S. at 250.  The moving party bears the burden of proving that no genuine issue of material fact exists.  *Id.* at 248.  All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant.  *Matsushita*, 475 U.S. at 587.  The substantive law of the underlying claim determines what the material facts are; factual disputes that cannot affect the outcome of the case should be disregarded by the court in deciding whether summary judgment should issue.  *Liberty Lobby*, 477 U.S. at 248.  Nor will pure speculation and unsupported assertions suffice to create a

genuine issue of material fact; the nonmoving party, to defeat summary judgment, must come forward with affidavits, interrogatories, depositions, and or other admissible evidence demonstrating the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324; *Sylvia Dev. Corp. v. Calvert County, Maryland*, 48 F.3d 810, 817 (4th Cir. 1995). This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

In this case, Plaintiffs do not dispute that the Policy at issue would *not* cover the losses associated with the collapse of the pole barn if that collapse was caused by Susquehanna's negligence. Instead, Plaintiffs argue that their losses are covered *because* the collapse was caused by high winds. (*See* Pls' Mem. Opp. pp. 4-5 ("If the collapse was caused by high winds, the collapse would have been caused by an accident covered under the definition of an occurrence.").) Plaintiffs rely on a similar approach to distinguish the various exclusions that Defendants offer as independent grounds for entering judgment in their favor as a matter of law. (*Id*. at p. 6 ("Both of these exclusions require the damage to be related to actions performed by the contractor. Damage caused by strong winds is not related to actions performed by the contractor.").)[9]

---

[9] As an independent reason for entering judgment in its favor, Defendant offers the following argument:

> The Declaration Page for the [Policy] classifies Susquehanna's business operation as being one of carpentry. As evidenced by the

11

As noted above, Plaintiffs' position on the cause of the barn's collapse changed *after* Defendants filed the subject Motion for Summary Judgment. Before that motion was filed, Plaintiffs consistently asserted that Susquehanna's *negligence* caused the collapse. For example, in an affidavit attached to his Motion for Default Judgment against Susquehanna in the Circuit Court for Cecil County, Plaintiff John Russell stated that:

> [Susquehanna] constructed Plaintiffs' pole barn in a negligent, unskillful and unworkman [sic] manner *causing* the roof trusses to collapse during reassembling of the pole barn destroying all of the roof trusses, support framing and other materials owned by the Plaintiffs.

(Def.'s Mem. Supp. Summ. J. Ex. D at p. 3 (emphasis added).[10]) However, after Defendant filed its Motion for Summary Judgment, Plaintiffs began staking out the claim that *high winds* caused the collapse. In their opposition papers, for example, Plaintiffs argue that:

> Defendant's own agents assert the collapse was the result of high

---

> contract at issue, Susquehanna's disassembly, moving, and reassembly of the Russell's pole barn amounts to more than carpentry. As Susquehanna is not classified as a "General Contractor," Atlantic Casualty is not obligated to indemnify or defend it for any claims arising out of work that far exceeds the scope of the "carpentry" designation listed in the policy's Declarations.

(Def.'s Mem. Supp. Summ. J. p. 14.) In response, Plaintiffs note that the pole barn "was a wood pole structure that one would reasonably expect to be constructed by a carpenter using carpentry knowledge and skills" and conclude that Susquehanna was acting "well within the scope of a 'carpentry' designation." (Pls' Mem. Opp. p. 8.) Viewing the facts in the light most favorable to Plaintiffs, this Court cannot find, based on the instant record, that Susquehanna was *not* operating as a "carpenter" in connection with the dismantling and reassembling of Plaintiffs' wooden pole barn.

[10]   (*See also* Paper No. 24 ¶ 3 (where Plaintiffs acknowledge that, in February 2007, they admitted that the "cause of the collapse on or about November 16, 2005 was the failure of Reynolds/Susquehanna to properly brace the roof trusses.")

12

>    winds. If the collapse was *caused* by high winds, the collapse
>    would have been caused by an accident covered under the
>    definition of an occurrence.

(Pls' Mem. Opp. pp. 4-5 (emphasis added).[11])

This change in position also impacted the expert report submitted by Plaintiffs in this action. Before Defendants filed their Motion for Summary Judgment, Plaintiffs submitted an expert report by Mr. Brent R. Leisenring of Robson Forensic, Inc. confirming that the pole barn collapsed because of Susquehanna's negligence:

>    According to [Plaintiff John] Russell, from the time the trusses
>    were erected until they collapsed, the trusses were not straight and
>    were bowing along their length. Also, Russell heard complaints
>    from a number of workmen that the trusses were not being
>    sufficiently braced. He overheard one worker state that
>    [Susquehanna's owner] Reynolds was complaining that they were
>    taking too long to set the trusses, the workers needed to hurry up,
>    and that they could add bracing to the trusses later . . .
>
>    Metal plate connected wood trusses, such as those utilized on this
>    pole barn, must be properly temporarily braced to prevent collapse
>    during construction. Proper temporary bracing in this instance
>    includes top chord lateral bracing, top chord diagonal bracing,
>    bottom chord bracing, and diaphragm bracing. There is no
>    evidence that any of this required top chord diagonal bracing,
>    bottom chord bracing, or diaphragm bracing had been installed.
>
>    This lack of proper temporary bracing of the roof trusses is the
>    *cause* of the roof collapse.

(Def.'s Mem. Supp. Summ. J. Ex. E at p. 2 (emphasis added); *see also* Def.'s Reply p. 6 (where

---

[11] (*See also* Paper No 24 Ex. 1 at ¶ 3 (affidavit by Plaintiff John Russell providing that "Stephen Schley of Johns Eastern Company, Inc. visited the Property two (2) or three (3) times to inspect the collapsed Arena. During his second visit to the Property, I met with Mr. Schley. During my meeting with him, Mr. Schley mentioned that there were a lot of high winds the evening the Arena collapsed. After his inspection, Mr. Schley stated to me that the Arena collapsed *because* of the high winds.") (emphasis added).)

Defendant notes that it "adopted Plaintiffs' expert designation" in this case).)  However, after the subject motion was filed, Plaintiffs attacked the judgments of their expert witness.  Specifically, Plaintiffs complained that:

> The findings of Mr. Leisenring, which are relied upon by Defendant, are based upon his examination of the Arena debris almost one (1) year after the collapse.  Mr. Leisenring's report is missing any mention of any discussion with Reynolds/Susquehanna regarding work methods or bracing techniques undertaken by Reynolds/Susquehanna.  Mr. Leisenring failed to account in his findings for wind conditions at the time of the collapse.  Further, Mr. Leisenring's examination of the debris was performed after the debris had been disturbed by Reynolds/Susquehanna's clean up.  Mr. Leisenring's findings expressly state that his findings are subject to change if additional information becomes available.

(Pls' Mem. Opp. p. 5.)

Plaintiffs' claim that the cause of the barn's collapse is a matter of *genuine* dispute primarily relies on two statements allegedly made by Defendant's representatives.  One of those statements is reported in an affidavit submitted by Plaintiff John Russell:

> Stephen Schley of Johns Eastern Company, Inc. visited the Property two (2) or three (3) times to inspect the collapsed Arena.  During his second visit to the Property, I met with Mr. Schley.  During my meeting with him, Mr. Schley mentioned that there were a lot of high winds the evening the Arena collapsed.  After his inspection, Mr. Schley stated to me that the Arena collapsed *because* of the high winds.

(Pls' Mem. Opp. Ex. A at ¶ 3 (emphasis added); *see also id*. Ex. B at ¶ 3 (affidavit from Plaintiff Diana Russell stating that "Mr. Schley accepted liability on behalf of Atlantic Casualty Insurance Company. . . .").)  The other statement occurs in a letter dated March 17, 2006 from Lawrence F. McAuliffe, Litigation Manager at American Claims Service, Inc. to the Maryland Insurance Administration providing:

14

> Atlantic Casualty issued a commercial general liability policy to Worrell Reynolds DBA Susquehanna Custom Homes. The insured was hired to dismantle Mr. Russell's barn and re-erect it at a different location. While re-erecting the barn the trusses collapsed. There were winds in excess of 30 mph that *caused/contributed* to the trusses collapsing. That raises serious questions about whether the insured is liable for any damages.

(Pls' Mem. Opp. Ex. C at p. 1 (emphasis added).)

After reviewing the parties' submissions, this Court finds that there exists a genuine dispute with respect to the cause of the barn's collapse. In the context of a motion for summary judgment, this Court is required to view all facts and reasonable inferences in the light most favorable to the nonmoving party. For reasons explained above, Plaintiffs' change in position with respect to the cause of the barn's collapse raises serious issues with respect to the *weight* and *credibility* that will be accorded to Plaintiffs' evidence at trial.[12] However, viewing the facts in the light most favorable to Plaintiffs, this Court finds that the alleged statements by Mr. Schley, American Claims Service, Inc., and Mr. Reynolds are sufficient to create a genuine dispute of material fact with respect to the cause of the pole barn's collapse.[13] As a result, this

---

[12]  As noted above, Plaintiffs and their expert have unequivocally stated that Susquehanna's negligence caused the barn to collapse. (*See* Def.'s Mem. Supp. Summ. J. Ex. D (affidavit from Plaintiff John Russell); Def.'s Mem. Supp. Summ. J. Ex. E (expert report from Brent R. Leisenring).) Significantly, neither Plaintiffs nor their expert have *retracted* their statements regarding the nature of the cause, although, as noted above, Plaintiffs have disparaged the judgments of the expert report submitted by Mr. Leisenring.

[13]  During this litigation, Plaintiffs have submitted an affidavit from Worrell Reynolds, the President of Susquehanna, asserting that Susquehanna did *not* reassemble the barn in a negligent fashion:

> My workers and I erected the [pole barn] in a workmanlike manner and with a level of skill consistent with the standards of the industry. This statement is based on my direct observation and supervision of the carpentry work performed on the [pole barn] at

Court cannot enter judgment as a matter of law in Defendant's favor and Defendant's Motion for Summary Judgment is DENIED.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment (Paper No. 20) is DENIED. A separate Order follows.


Dated: July 30, 2007 /s/
Richard D. Bennett
United States District Judge

---

the Property. . . . After Ms. Russell said that I could finish the work, [Mr. Schley] accepted liability on behalf of Atlantic Casualty Insurance Company and directed me to start cleaning up the [pole barn].

(Paper No. 30 Ex. 1 at ¶¶ 1 & 3.)